UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO GARRUTO, LAURA GARRUTO AND FANCY PUPS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>DOREEN LONGO, EDWARD HEYBURN, AND EDWARD HARRINGTON HEYBURN, ESQ.<br><br>Defendants. | Civil Action No. 12-2668 (PGS)<br><br><br>**MEMORANDUM & ORDER** |

      This matter was recently removed from the Superior Court of New Jersey to the District Court because of a federal question raised in the complaint. The plaintiffs allege in the complaint a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), together with three common law causes of action for defamation, assault and harassment, and tortious interference with contract. The complaint was originally filed in New Jersey Superior Court, Middlesex County. Once the action was removed, plaintiffs filed a motion to remand.[1] Defendant, Edward Heyburn, has also filed a motion to dismiss plaintiffs' complaint as to himself and his law firm, Edward Harrington Heyburn, Esq. pursuant to Fed. R. Civ. P. 12(b)(6). The Court will review the sole federal cause of action under the motion to dismiss standard.

---

[1] There is also a pending Order To Show Cause ("OTSC") seeking temporary restraints to enjoin defendants from using the internet for further defamation of the plaintiffs. This OTSC was filed by the plaintiffs before New Jersey Superior Court, Middlesex County. A hearing date was scheduled, but the defendants removed the matter to this Court prior to any hearing.

I.     FACTUAL BACKGROUND

The facts are as follows: Plaintiffs, Rocco and Laura Garruto, own and operate a pet store called Fancy Pups, Inc. located in Avenel, New Jersey. Evidently, Fancy Pups sold a German Shepard puppy to defendant, Doreen Longo ("Longo"), for the amount of $850.00 plus tax. Immediately thereafter, the puppy contracted the parvo virus and died. The plaintiffs contend that there is no proof that the puppy contracted the parvo virus at the pet store. Plaintiffs allege, as a result of the puppy's death, the defendants "began an internet crusade to run Fancy Pups out of business." Compl. ¶ 15. According to the complaint, defendant Longo posted photos of the dead puppy on the internet and called Mr. Garruto a "puppy killer" and Fancy Pups a "puppy mill." Compl. ¶ 17. Specifically, defendant Longo accessed websites such as "Yelp" and "Manta Media" and published disparaging comments about Fancy Pups. Defendant Longo also published Buyer Beware Statements in the Asbury Park Press, which stated "Yes, this is Rocco Garruto's ad. Here we go again, more sick/dead puppy mill puppies. When will this MONSTER stop????" Compl. ¶ 17. According to the complaint, the advertisement also included a picture of the dead puppy.

Furthermore, defendant Longo allegedly used these websites to present her issue to the public. The complaint states:

> Manta Media Inc. is an internet web service which assist businesses in creating a company profile for advertising purposes on the internet. Defendant Longo created a company profile on the internet for Fancy Pups and printed under the heading "Products & Services" the following list, "Selling seriously ill puppies, Refuse to give refunds, LIES" and under the heading "About Fancy Pups" she printed the following statement, "We sell sick puppies at top dollar that will die. I am an unscruplious [sic] man who will take your money and leave you with a dead dog. I am evil LIAR." Compl. ¶ 18.

Additionally, the complaint alleges that defendant Longo posted negative updates on "Yelp" about court proceedings involving Rocco Garruto and Fancy Pups in Woodbridge Municipal Court.

Defendant Longo retained the services of the law firm of Edward Heyburn to represent her in this matter. Mr. Heyburn filed an action in the Special Civil Part of New Jersey Superior Court. Evidently, "Defendant Longo secretly recorded her attorney, Defendant Heyburn, serving the complaint on Plaintiff Garruto, and the video has since been posted on Defendant Heyburn's website for his law firm under a link entitled, 'You've been Served Rocco Garruto.'" Compl. ¶ 22.

In addition to the video, Defendant Heyburn also placed several links on his law firm's website to make comments about Rocco Garruto and Fancy Pups as follows:

> "Certified Convictions for Rocco Garruto"- Once this link is clicked, there appear 27 separate pages of purported convictions against Rocco Garruto. However, these "convictions", are against Fancy Pups and not Rocco Garruto. Out of the 27 pages of "certified convictions", approximately 5 are "convictions" against Fancy Pups for consumer complaints, not criminal convictions. Twenty-two are dismissed. Compl. ¶ 27a.
>
> "Consumer Fraud Action filed Against Fancy Pups and Owner Rocco Garruto"- This link contains a picture of 3 German Shepard puppies and states, "The Avenel Puppy Mill run by Rocco Garruto sold puppies infected with the deadly virus known as the Parvo. While customers though [sic] they were taking home a Christmas present, they were actually taking home a dying dog that was set to drain their emotions and their bank accounts. Although Rocco Garruto was well aware that the puppies he was selling [sic], he continued to sell them to unsuspecting customers . . . if you or someone you know has been a victim of this fraud, please call my office immediately. (609) 259-7600 or heyburn@heyburnlaw.com." Compl. ¶ 27b.
>
> "Middlesex County Consumer Affairs files Charges against Rocco Garruto and Fancy Puppies" Under this link he states that "a significant number of Consumer Fraud Complains [sic] against the proprietor of Fancy Puppies for selling sick and dying dogs. Below is a link to those complaints." Compl. ¶ 27c.

According to the complaint, Defendant Heyburn has concluded, without any proof, that Defendant Longo's puppy contracted the parvo virus while in the care of Fancy Pups. The complaint further alleges that

> the link is self-serving to Mr. Heyburn and serves no other purpose but to harm Plaintiffs and promote himself as some form of public advocate or crusader. Additionally, a viewer can easily confuse the statements because (i) they must be true because he's an attorney and (ii) the links give an appearance that Defendant Heyburn has something to do with the "certified convictions" and the "significant number of Consumer Fraud complains [sic] . . ." filed against Plaintiff Rocco Garruto. Compl. ¶ 27.

Interestingly, the complaint does not allege that plaintiffs registered Fancy Pups as a trademark or is a famous mark that everyone knows.

## II. DISCUSSION

### A. Removal

When an action is removed to federal court pursuant to 28 U.S.C. § 1441, the removing party bears the burden of demonstrating that the federal court has subject matter jurisdiction over the action." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). However, Section 1441 must be strictly construed against removal, with all doubts to be resolved in favor of remand. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). The federal statute governing removal mandates that "if any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Here, defendants have argued that subject matter jurisdiction is based on the federal question raised in the complaint. The statute governing federal question jurisdiction provides that "district

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The parties have not argued that diversity jurisdiction exists here, and therefore the Court will not consider that jurisdictional basis under 28 U.S.C. § 1332. It is well established that a claim arises under federal law within the meaning of Section 1331 if the "federal question is presented on the face of the plaintiff's properly pleaded Complaint," which is known as the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, the plaintiffs have alleged a federal cause of action in Count Three of the complaint for a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d). Thus, plaintiffs' complaint plainly presents a federal question over which this Court has subject matter jurisdiction. Additionally, the Court has supplemental jurisdiction over the plaintiffs' state law claims. 28 U.S.C. § 1367(a); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997). Accordingly, this Court has the power to review the merits of this case.

    B.    **Motion to Dismiss Standard**

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*,

531 U.S. 1149, 121 S.Ct. 1091 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

### C. Anticybersquatting

The issue is whether the Anticybersquatting Consumer Protect Act ("ACPA"), 15 U.S.C. § 1125(d), as the basis for this Court's subject matter jurisdiction, applies in this case. If it does not apply, then only common law causes of action are raised, and the Court may decline jurisdiction since there is no federal question. 28 U.S.C. §§ 1331;1447(c).

Count Three of the complaint provides two paragraphs about defendants alleged cybersquatting activities. They are:

> By intentionally and wrongfully creating a company profile of Fancy Pups on the internet, and publishing the statement, "We sell sick puppies at top dollar that will die. I am an unscruplious [sic] man who will take your money and leave you with a dead dog. I am evil LIAR." Defendants are liable to the Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(A).
>
> By working in concert and intentionally and wrongfully videotaping Plaintiff, Rocco Garruto, being served a summons and complaint, without the consent of any Judge, and broadcasting the name and image of Plaintiff Garruto on www.heyburnlaw.com for purposes of promoting his lawfirm [sic], Defendants are liable to the Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(A).

Generally, the ACPA, codified under § 43(d) of the Lanham Act at 15 U.S.C. § 1125(d), was enacted to prevent

> the unauthorized registration or use of trademarks as Internet domain names or other identifiers of online locations (commonly known as 'cybersquatting')--
>
> > (1) results in consumer fraud and public confusion as to the true source or sponsorship of products and services;
> >
> > (2) impairs electronic commerce, which is important to the economy of the United States; and
> >
> > (3) deprives owners of trademarks of substantial revenues and consumer goodwill. S. 1255, 106th Cong. § 2 (1999).

Accordingly, the ACPA "prohibits registering a domain name that is confusingly similar to a distinctive mark or dilutive of a famous mark with 'a bad faith intent to profit' from it." *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007). The Ninth Circuit described a typical example of cybersquatting as "the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." *Interstellar Starship Svcs., Ltd. v. Epix,*

*Inc.*, 304 F.3d 936, (9th Cir. 2002).

In order to prove cybersquatting in a civil action, a defendant, among other things, may be liable to the "owner of a mark," if the defendant

>   (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
>   (ii) registers, traffics in, or uses a domain name that–
>
>   (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
>   (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
>   (III) is a trademark, word, or name protected by reason of *section 706 of title 18, United States Code* ["Red Cross"] or *section 220506 of title 36, United States Code* [United States Olympic Committee]. 15 U.S.C. § 1125(d)(1)(A).

Therefore, the Court must first determine if the plaintiff has proved that Fancy Pups is a distinctive or famous mark. *Id. See also Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). A mark must be distinctive to be legally protected under the Lanham Act, 15 U.S.C. § 1051 *et seq*. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:2 (4th ed.). The U.S. Supreme Court has identified the general rule on distinctiveness: "an identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning. *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)). Depending on the type of mark -- generic, descriptive, suggestive or arbitrary -- there are varying degrees of distinctiveness. *Id.* Whether a mark is inherently distinctive or requires secondary meaning can be analyzed as follows:

> At the extremes of trademark protection are generic terms which can claim no protection, and arbitrary or fanciful terms which may always claim protection . . . .  In the broad middle ground where most of the trademark battles are fought are the terms which are primarily descriptive and those which are only suggestive.  The distinction, while not always readily apparent, is important, because those which are descriptive may obtain registration [and protection] only if they have acquired secondary meaning, while suggestive terms are entitled to registration [and protection] without such proof. *Id.* (quoting *West & Co. v. Arica Inst., Inc.*, 557 F.2d 388 (2d Cir. 1977)).

Additionally, a mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

The plaintiffs have not pled sufficient facts to prove that "Fancy Pups" is a distinctive mark or a famous mark that is entitled to trademark protection.  Even assuming "Fancy Pups" is a distinctive or famous mark, the plaintiffs have not demonstrated that the defendants registered a domain name in bad faith with the intent to profit from the plaintiffs' mark.  "Domain name" is defined in the Act as "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet."  15 U.S.C. § 1127.  Although plaintiffs have alleged that defendants posted defamatory comments about Fancy Pups on the internet, these comments were posted on established sites such as Yelp, Manta Media, and defendant Heyburn's own law firm website, but there are no allegations that the defendants created a domain name using "Fancy Pups" to publicize negative comments.  Without evidence that "Fancy Pups" is a protected mark and that the defendants registered a domain name that included "Fancy Pups" within that domain name to allegedly defame the plaintiffs, this Count fails to state a claim for cybersquatting as set forth in the statute.  Accordingly, since the only federal cause of action has been dismissed, this matter is remanded to the state court for further proceedings.

**ORDER**

**IT IS** on this 31st day of May, 2012

**ORDERED** that defendants' motion to dismiss is GRANTED in part (ECF No.10), and Plaintiffs' Count Three for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) is dismissed; and it is further

**ORDERED** that this matter is remanded to New Jersey Superior Court, Middlesex County for further proceedings pursuant to 28 U.S.C. § 1447(c); and it is further

**ORDERED** that plaintiffs' motion to remand (ECF No. 2) and plaintiffs' Order To Show Cause are dismissed as moot.

<em>s/Peter G. Sheridan</em><br>
PETER G. SHERIDAN, U.S.D.J.